UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JON DAVID PAUL,

       Petitioner,

v.                                     Case No. 3:18-cv-1032-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

## ORDER

### I. Status

      Petitioner Jon Paul, an inmate of the Florida penal system, initiated this action on August 21, 2018,[1] by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition; Doc. 1). In the Petition, Paul challenges two 2010 state court (Duval County, Florida) judgments of conviction for armed robbery. Paul raises seven grounds for relief. See Petition at 5-53.[2] Respondents submitted a memorandum in opposition to

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the page number assigned by the Court's electronic docketing system.

the Petition. <u>See</u> Answer (Response; Doc. 8) with exhibits (Resp. Ex.). Paul did not file a brief in reply.[3] The Petition is ripe for review.

## II. Relevant Procedural History

In July of 2009, the State of Florida (State) charged Paul by way of Information in Case Number 2009-CF-8114 with one count of armed robbery and in Case Number 2009-CF-8115 with another count of armed robbery. Resp. Exs. 1 at 16; 2 at 18. On October 15, 2009, Paul entered an open plea of guilty in both cases. Resp. Exs. 1 at 26-27; 2 at 32-33. On April 16, 2010, following a sentencing hearing, the circuit court sentenced Paul in both cases to a term of imprisonment of forty-nine years. Resp. Exs. 1 at 28-31; 2 at 34-37. The circuit court ordered the sentences to run concurrently with each other. <u>Id.</u> On May 5, 2010, Paul filed a motion to reduce his sentences in both cases. Resp. Exs. 1 at 43-46; 2 at 44-47. The circuit court denied the motion on May 11, 2010. Resp. Exs. 1 at 47; 2 at 48.

Paul appealed his convictions and sentences in both cases to Florida's First District Court of Appeal (First DCA). Resp. Exs. 1 at 48; 2 at 49. Paul's appellate attorney filed <u>Anders</u>[4] briefs. Resp. Exs. 3 at 1-13; 5 at 1-13. Paul did not file pro se briefs and the State did not file answer briefs. On August 10,

---

[3] On December 12, 2019, the Court directed Paul to file a reply or a notice that he would not be filing a reply and advised him that if he failed to respond, the Court would consider this action ripe and all briefing would be closed. <u>See</u> Doc. 10. Paul did not file a reply or notice in response.

[4] <u>Anders v. California</u>, 386 U.S. 738 (1967).

2011, the First DCA per curiam affirmed Paul's convictions and sentences in both cases and issued the mandates on September 7, 2011. Resp. Exs. 4; 6.

On August 8, 2012, Paul, with the assistance of counsel, filed in both cases a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motions). Resp. Ex. 7 at 4-16. In the Rule 3.850 Motions, Paul alleged his counsel was ineffective for: (1) advising Paul to testify at his sentencing hearing that he possessed and used a firearm during the commission of the robberies; and (2) failing to investigate defenses before advising Paul to plead guilty. Id. The circuit court denied relief. Id. at 17-32. On May 9, 2018, the First DCA per curiam affirmed the denial of the Rule 3.850 Motions without a written opinion and issued the mandate on May 30, 2018. Resp. Ex. 9.

## III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations,

which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Paul's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is

"'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S.

> Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v.
> Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192
> L.Ed.2d 356 (2015). Whatever that "precise
> relationship" may be, "'a state-court factual
> determination is not unreasonable merely because the
> federal habeas court would have reached a different
> conclusion in the first instance.'"[5] Titlow, 571 U.S. at
> ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S.
> 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S.

Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited

to the record that was before the state court that adjudicated the claim on the

merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language

in § 2254(d)(1) "requires an examination of the state-court decision at the time

it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." Burt v. Titlow,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

---

[5] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme

> court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[6] supra, at 747–748, 111 S. Ct. 2546; Sykes,[7] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted

---

[6] Coleman v. Thompson, 501 U.S. 722 (1991).
[7] Wainwright v. Sykes, 433 U.S. 72 (1977).

> claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[8] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[8] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a

court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds

another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Paul alleges in the title of this ground for relief that his counsel was ineffective for failing to investigate, discover, and object to a jurisdictional defect. Petition at 5. However, the body of his arguments does not address counsel's alleged deficiencies but instead argues the charging documents were defective. Id. at 5-11. As such, in liberally construing this claim, the Court will address both issues. According to Paul, the charging documents filed in both his cases were defective because the prosecutor who signed them affirmed that she had received testimony under oath from material witnesses when she actually did not. Id. In support, Paul contends that there were no sworn statements included in his discovery materials and no evidence indicating the prosecutor had received such testimony. Id. Thus, he contends that the circuit court lacked subject matter jurisdiction because Paul was never properly charged. Id.

Respondents contend that to the extent Paul raises a stand alone claim concerning the allegedly defective charging documents, such claim is not cognizable in a federal habeas petition because it is solely a matter of state law. Response at 17-18. Concerning Paul's ineffective assistance of counsel claim, Respondents assert that Paul never raised this claim in state court; therefore, he failed to exhaust it. Id. at 19-20. Although Paul did not file a reply, in the Petition he contends that lack of subject matter jurisdiction can be raised at any time. Petition at 6. He also maintains that this claim was unknown to him at the time he sought state review and if his counsel knew, he was ineffective for failing to raise it. Id. at 11.

The sufficiency of a charging document is not "the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction." DeBenedictis v. Wainwright, 674 F.2d 841, 842-43 (11th Cir. 1982). The Eleventh Circuit has explained:

> "An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir.2009) (citation and quotations omitted). "In determining whether an indictment is sufficient, we read it as a whole and give it a 'common sense construction.'" Id. (citing United States v. Gold, 743 F.2d 800, 813 (11th Cir.1984) and United States v. Markham, 537 F.2d 187, 192 (5th Cir.1976)). "In other

> words, the indictment's 'validity is to be determined by
> practical, not technical, considerations.'" <u>Jordan</u>, 582
> F.3d at 1245 (citing <u>Gold</u>, 743 F.2d at 812).

<u>United States v. Schmitz</u>, 634 F.3d 1247, 1259-60 (11th Cir. 2011) (footnote omitted). Here, the charging documents were legally sufficient because they presented the essential elements of the offense of armed robbery, notifying Paul of the charges he was facing. Resp. Exs. 1 at 16; 2 at 18. Florida procedural rules require that "[a]n information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness or witnesses for the offense." Fla. R. Crim. P. 3.140(g). This oath and verification requirement is a creature of state law and not found in the United States Constitution. As such, whether the charging documents comply with this state procedural rule is a matter of state law only, and, thus, not cognizable in federal habeas proceedings. <u>See</u> <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Accordingly, Paul's claim in ground one that the circuit court lacked subject matter jurisdiction provides no basis for habeas relief.

Turning to Paul's claim of deficient performance, the record reflects that Paul did not raise this issue on direct appeal or in his Rule 3.850 Motions. Therefore, the claim is unexhausted. To the extent Paul contends issues concerning a state court's subject matter jurisdiction can be raised at any time in a federal habeas proceeding, he offers no federal case law to support the contention, and the Court independently has not identified any federal case law or statutory authority supporting the proposition. As such, this argument does not excuse Paul's failure to exhaust. To the extent Paul's allegations in the Petition could be construed to contend that his failure to exhaust this claim should be excused under Martinez v. Ryan, the contention is unavailing. The Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739

F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if it "has some merit." Martinez, 566 U.S. at 14. For purposes of determining whether postconviction counsel was ineffective, a petitioner "must show more than the mere fact they failed to raise potentially meritorious claims; he must show that no competent counsel, in the exercise of reasonable professional judgment, would have omitted those claims." Hittson v. GDCP Warden, 759 F.3d 1210, 1263 (11th Cir. 2014) (emphasis in original).

In Florida, a charging document is considered fundamentally defective only if it completely omitted an essential element of the crime, or was so vague, indistinct or indefinite that the defendant was misled. Delgado v. State, 43 So. 3d 132, 133-35 (Fla. 3d DCA 2010). "For an information to sufficiently charge a crime it must follow the statute, clearly charge each of the essential elements, and sufficiently advise the accused of the specific crime with which he is charged." Price v. State, 995 So. 2d 401, 404-406 (Fla. 2008). "Generally the test for granting relief based on a defect in the information is actual prejudice to the fairness of the trial." Id. As explained above, the charging documents filed in Paul's criminal cases sufficiently and clearly alleged each element of the crime and advised him of the charges against him. Resp. Exs. 1 at 16; 2 at 18. The alleged technical deficiency in the charging documents about which

Paul complains did not create unfair proceedings against him. Moreover, this claim is based entirely on speculation based on his failure to find sworn statements in the discovery materials he received. However, such speculation does not support a conclusion that the prosecutor did not actually receive sworn testimony. The speculative nature of this claim renders it meritless. See Jenkins v. Comm'r, Alabama Dep't of Corr., 963 F.3d 1248, 1273 (11th Cir. 2020) (quotations omitted) (explaining that "more than mere conceivability is required to establish prejudice: The likelihood of a different result must be substantial, not just conceivable."). Accordingly, Paul fails to establish that this claim is a substantial claim such that his failure to exhaust should be excused. For the above stated reasons, Paul is not entitled to relief on the claims in Ground One.

## B. Ground Two

As Ground Two, Paul argues that his counsel was deficient for advising him to testify during his sentencing hearing that he possessed and used a firearm during the commission of offenses. Petition at 13-19. Paul maintains that his counsel told him that if he admitted to possessing the firearm, then there would be a greater chance of receiving a youthful offender sentence. Id. Instead, the circuit court sentenced Paul to forty-nine years in prison, which far exceeded the fifteen-year sentence the State recommended. Id. According to Paul, the circuit court determined forty-nine years was appropriate because

Paul actually possessed the weapon. Id. As such, he claims his counsel was deficient for recklessly recommending to him that he admit to having possessed the gun. Id. Additionally, Paul contends that his counsel failed to advise him of the maximum sentence he faced if he proceeded to trial and generally did not advise him of the consequences of entering an open plea. Id. Paul also claims that his attorney should have attempted to negotiate a plea deal on his behalf. Id.

Respondents contend that Paul exhausted the claim that counsel erred in advising him to admit he possessed a firearm, but Paul did not exhaust his claim that counsel should have negotiated a plea deal. Response at 22-23. Thus, Respondents argue that relief on this latter claim is due to be denied. Id. The record reflects that Paul did not argue, on direct appeal or in his Rule 3.850 Motions, that his counsel was deficient for failing to negotiate a plea or failing to advise Paul of the consequences of entering his open plea. Resp. Exs. 3 at 7. Paul has not alleged cause and prejudice to overcome this, or otherwise alleged he is actually innocent. As such, these subclaims are due to be dismissed as unexhausted.

Paul did, however, exhaust his claim that counsel was ineffective in advising him to admit he possessed a gun, as he raised a substantially similar claim as ground one of his Rule 3.850 Motions. Resp. Ex. 7 at 6-11. The circuit court denied relief, explaining:

Initially, the Court finds that this claim is legally insufficient because Defendant fails to allege that but for counsel's alleged deficiencies, he would not have entered a plea but would have gone to trial. See e.g., Carruthers v. State, 42 So. 3d 337 (Fla. 4th DCA 2010) (Postconviction claims challenging voluntariness of defendant's plea were facially insufficient because, inter alia, defendant did not allege that, had the errors not occurred, he would not have entered his plea but would have proceeded to trial).

The Court further finds that Defendant is not entitled to amend this claim because, as explained infra, it cannot reasonably be amended in good faith to state a sufficient claim. See Spera v. State, 971 So. 2d 754, 762 (Fla. 2007) (Permitting postconviction movants to amend claims "only if they can be amended in good faith"). No minimum mandatory term was imposed as a result of Defendant's admission to carrying a firearm. The issue of whether Defendant actually possessed a firearm was addressed during the plea hearing. The prosecutor noted that it was pursing an investigation "to see if we could actually file the minimum mandatory in these cases . . . and it was a strong possibility in this case, although it hadn't yet been done." Defendant told the Court that he had discussed this issue with defense counsel, and he wanted to proceed with entering a plea before the State made its final decision about whether it would pursue a minimum mandatory term against him based on actual possession of the firearm.

The record is clear that Defendant was aware he could receive consecutive life sentences for his participation in these crimes, and he confessed to providing the weapons and carrying the real firearm in the hopes that his candor would inspire the Court to be lenient in imposing sentence. Instead of imposing the maximum possible term of consecutive life sentences, Defendant received 49-year concurrent sentences with no minimum mandatory terms. To that

extent, Defendant's candor did result in a benefit to him, contrary to the allegation in his motion. The State had recommended 15 years' imprisonment. Defendant's sentence was longer than those of his codefendants because of the central role Defendant played in the crime spree, not just the fact that he carried the real firearm: the group met at his house to plan the events, Defendant drove the getaway vehicle on at least one occasion, he was out of the car on every occasion, as well as the fact that he was the one brandishing the real firearm as explained during the sentencing hearing.

In sum, it is clear that Defendant's open plea, and his candor about the extent of his participation, were the reasons he did not receive a significantly higher sentence - potentially life imprisonment. The fact that he was the one brandishing the real firearm was only one of several factors relied upon by the Court in imposing a more onerous sentence than that of his codefendants. Being fully aware that there was no agreement as to disposition, Defendant knowingly gambled that his admission to actually possessing the real firearm would get him a Youthful Offender sentence. The gamble did not pay off. And yet even after the sentence was imposed, Defendant continued to rely on his candor with the Court as a basis for seeking a reduction of his sentence. Again, the gamble failed to pay off.

The crux of Defendant's claim appears to be that counsel was ineffective in advising Defendant to truthfully concede at the sentencing hearing that he possessed the real firearm during the crime spree in an effort to convince the Court to impose a Youthful Offender sentence. In the context of the procedural facts of these cases and the dispositions of the codefendants, it is clear to the Court that Defendant'[s] claim is simply a case of buyer's remorse. Defendant was well aware at all time, from the plea hearing through the sentencing hearing that

> there was no agreement as to disposition, and that he
> was subjected to potential consecutive life sentences.
> He told the Court at the time of his plea that no
> promises had been made to him to get him to enter his
> plea. After careful consideration and examination of
> the facts, the Court finds that Defendant has failed to
> meet either the performance or the prejudice prong of
> the <u>Strickland</u> test, and Ground One is without merit.

<u>Id.</u> at 26-28 (record citations omitted). The First DCA per curiam affirmed the denial of this claim without a written opinion. Resp. Ex. 9.

To the extent that the First DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Paul is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground Two is without merit. "A plea conference is not a meaningless charade to be manipulated willy-nilly after the

---

[9] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

fact; it is a formal ceremony, under oath, memorializing a crossroads in the case," and "[w]hat is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007). Indeed, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court).

The record reflects that during the plea colloquy, Paul admitted he was guilty and that he was satisfied with his counsel's representation. Resp. Ex. 1 at 235-37. Paul also acknowledged that he faced a maximum sentence of life in prison and that no one had made any promises to him to enter his open plea. Id. at 234-37, 240. During the sentencing hearing, the two victims in both cases testified that approximately four people robbed them on the streets, with both being able to positively identify the suspects. Id. at 82-98. One of the co-defendants, Jennifer Smith, testified that Paul possessed a real gun and directed her and the others to empty the pockets of the two victims. Id. at 129-32. Likewise, another co-defendant, Justin Voshell, testified that Paul decided to bring the guns. Id. at 148. Paul was the last to testify. According to Paul, he bought the BB gun Voshell possessed and also bought the .380 caliber handgun he possessed during the commission of the robberies. Id. at 160-61. Paul also

apologized to the victims, the co-defendants, and their families, stating that it was "all my fault that got us in here." Id. at 159. He acknowledged that he should have been the one to say no to the robberies, that he knew it was wrong in his mind, but that he did not listen. Id. at 157. Notably, the State introduced letters Paul wrote while in Jail that attempted to "rally the troops to not come forward and not cooperate with the state." Id. at 197. The prosecutor also represented that because each defendant pled and took responsibility, she declined to file more charges, although she could have. Id. at 169-70.

In sentencing Paul to forty-nine-year terms of incarceration, the circuit court explained:

> My review of the record makes clear that on the night of the incident in question, there was a very clear, loosely organized, small group of young people who had decided to engage in potentially lethal conduct that exposed numerous people within our community to potentially life ending scenarios. The record makes clear and undisputed and in a meaningful way that you were an active willing participant to that activity.
>
> What is also made clear, and I believe was undisputed, is that you were the one holding the true firearm. And that you were the one brandishing or pointing that firearm at every episode to which you have been charged.
>
> What is clear from this record is that that night in question there was a crime induced high that spurred you all from one armed robbery to the next. And by doing so, you have conducted by your actions and you have participated in heinous criminal activities that exposed this community to severe and

> potentially life ending conduct. I believe y'all even met
> at your house. I believe you drove the first time, if I am
> not mistaken, by the record presented to this Court.
> And the nature and significance of your participation
> simply cannot be overlooked.

Id. at 212-13.

Based on this record, Paul was well aware of the maximum sentence he faced when he entered his open plea and he stated under oath that his counsel made no promises to him concerning the sentence he could receive. While the circuit court did address Paul's possession of a firearm when it imposed the sentence, it also addressed other factors that influenced the sentence it ultimately imposed. As such, Paul's possession of a firearm was not the sole factor in the circuit court's determination of the length of the prison sentence. Accordingly, Paul's claim that he would not have received the same sentence had he not admitted he possessed a firearm is wholly speculative. Indeed, even if Paul had not testified on the subject, his two co-defendants also testified that Paul obtained and possessed the firearm. Therefore, the circuit court could have made the same determination concerning Paul's possession of the weapon even if Paul had not testified. For these reasons, Paul has failed to demonstrate prejudice. See Jenkins, 963 F.3d at 1273. In light of the above analysis, relief on the claim in Ground Two is due to be denied.

## C. Ground Three

Next, Paul asserts that his counsel was ineffective for failing to investigate the case, conduct depositions, and file a motion to suppress. Petition at 21-29. Had counsel investigated, deposed witnesses, and filed a motion to suppress the search and seizure of his vehicle, Paul contends that he could have obtained a more favorable plea deal from the State than the open plea he entered. Id. at 21-22. As to the motion to suppress, Paul avers that law enforcement needed a warrant to stop and search his vehicle and a motion to suppress would have excluded the weapons found in the vehicle. Id. at 28-29. Without these pre-trial investigations and motion practice, Paul claims that there is no way he could have made an informed decision to enter an open plea. Id. at 22. Paul also asserts that his counsel should have told the prosecutor Paul was willing to cooperate and then negotiate a plea deal; instead, of telling the prosecutor this after Paul had already entered an open plea of guilty. Id. at 23-24. According to Paul there was no upside in counsel advising him to enter an open plea. Id. at 25-26. Paul contends that he did not understand what was happening during the plea colloquy and just answered as a means to appease his counsel and to get through the proceeding. Id. at 26-27.

Paul raised a similar claim in his Rule 3.850 Motions. Resp. Ex. 7 at 11-14. In denying relief on this claim, the circuit court found:

At the commencement of the plea hearing, defense counsel stated, "[A]fter conducting discovery in the case, and investigating the allegations made against [Defendant], my client has authorized me to withdraw his previously entered plea of not guilty, and enter a plea of guilty straight to the Court." Defendant did not dispute this statement.

The plea form signed by Defendant stated in pertinent part

> My attorney has investigated the State's case against me to my satisfaction and we have discussed all the possible defenses to my satisfaction. . . . My attorney has taken all actions and spoken to all person requested by me, or has explained to my satisfaction and agreement why such things were not done, and I concur with my attorney's decision in that regard. I am completely satisfied with the services rendered by my attorney on my behalf in this case.

At the plea hearing, Defendant admitted he had gone over the plea form with his attorney, that he can read and write English, that he understood what he read, and that by signing the plea form he was agreeing that the statements therein were true and correct. Defendant also engaged in the following colloquy with the Court:

> THE COURT: And are you satisfied that your attorney has thoroughly investigated the case against you?

> THE DEFENDANT: Yes, ma'am.

> THE COURT: And have you and he discussed . . . all the defenses that you

could have raised, if you had had a trial in
this case?

THE DEFENDANT: Yes, Your Honor.

In light of the statements in the plea form, as
well as Defendant's statement at the plea hearing that
he had read it and understood it and that he was
satisfied that his attorney had thoroughly investigated
the case, the Court finds that Defendant is unable to
meet either the performance or the prejudice prong of
the <u>Strickland</u> test. <u>See, e.g.</u>, <u>Hen Lin Lu v. State</u>, 683
So. 2d 1110 (Fla. 4th DCA 1996) (Pre-printed plea form
containing rights advisements may be used by Court
to inform defendant of all rights he is waiving, as long
as Court orally verifies that defendant has
intelligently consumed the written information
contained within it); <u>Callaway v. State</u>, 41 Fla. L.
Weekly D2206 (Fla. 3d DCA Sept. 28, 2016) (Trial
counsel's failure to depose victims did not prejudice
defendant, as element of ineffective assistance of
counsel claim, in proceedings on armed robbery with a
firearm charges, to which defendant pled guilty,
despite existence of identification issue; strengths and
weaknesses of victim's identifications were well known
to both defendant and his counsel prior to plea, and
there was no particularized harm flowing from
counsel's failure to depose victims).

. . . .

The Court relies on the chronological events of
this crime spree as set out in the Underlying Facts of
the Crimes, <u>supra</u> and reiterates only the most salient
facts here. After the Martin/Barkoski/Gordon robbery,
a BOLO was dispatched indicating that "the same
suspect vehicle was used" at two prior robberies that
had just occurred in the immediate area.

After the final robbery of victim Tristan Tex, a
BOLO was broadcast for a green Jeep Cherokee.

Immediately thereafter, an officer spotted a 1996 Jeep Cherokee van, described in the arrest report as blue, in the immediate area where the string of robberies had just occurred. The officer followed the vehicle until it turned onto a dead end road, requiring it to stop. Significantly, because of the dead end the car was forced to stop <u>before the officer even activated his blue lights</u>.

The Court finds that even if counsel had filed a motion to suppress, there is no reasonable probability that it would have been granted because the vehicle stopped due to the dead end, not because of any law enforcement action. But even if the vehicle had been stopped due to law enforcement action, the Court finds that based on the totality of the circumstances available to the officer at the time, he had probable cause to believe that the Jeep Cherokee was involved in the string of robberies that had just occurred in that exact area; therefore the stop would have been lawful. Because there was no factual or legal basis to support a motion to suppress, defense counsel cannot be deemed ineffective in failing to file one. <u>See</u> <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990) (Defense counsel cannot be deemed ineffective for failing to file a motion that has no merit).

<u>Id.</u> at 28-31 (emphasis in original and record citations and footnote omitted). The First DCA per curiam affirmed the denial of relief without issuing a written opinion. Resp. Ex. 9.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication

of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Paul is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of the claim is not entitled to deference, the claim in Ground Three fails. Under Florida law, by entering a guilty plea, a defendant waives any right to have his or her counsel investigate or put forward a defense. Smith v. State, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010) (citing Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006)). Similarly, "[w]here a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge." Id. Moreover, a defendant "cannot assert that his plea was not knowingly and voluntarily entered where he concedes he was well aware of his counsel's deficiencies prior to entry of his plea." Davis, 938 So. 2d at 557.

During the plea colloquy, Paul admitted he was guilty and affirmed, under oath, that he was satisfied with his counsel's representation and that he had discussed all possible defenses with counsel. Resp. Ex. 1 at 235-37. Of specific import, Paul affirmatively acknowledged he was giving up his right to file a motion to suppress. Id. at 239-40. Based on this record, Paul waived the

right for his attorney to investigate or put forward a defense, including the filing of a motion to suppress. See Smith, 41 So. 3d at 1040. Paul is bound by his sworn affirmations in court, which refute the instant claim. See Blackledge, 431 U.S. at 74; Kelley, 109 So. 3d at 812-13. In light of the above analysis, relief on the claim in Ground Three is due to be denied.

## D. Ground Four

Next, Paul contends that his forty-nine-year concurrent sentences were unconstitutionally disproportionate to the offenses committed and disparate in comparison to the sentences his co-defendants received, and that his counsel was ineffective for failing to object to the sentences for the same reasons. Petition at 31-47. Paul maintains that he took responsibility for his actions, was only eighteen years old at the time of the offense, offered assistance to the State, scored out to a minimum 82.5 months in prison, and the prosecutor had recommend only fifteen years in prison. Id. Based on these factors and the facts underlying the offenses, Paul argues his sentences are disproportionate to the offenses committed. Id. Paul further contends that in light of the fact his co-defendants received sentences of fifteen years, thirty-five years, and forty-two-and-a-half years in prison, his forty-nine-year sentences are disparate in comparison considering they all equally participated in the robberies. Id. at 43-47.

Respondents contend that this claim is unexhausted because Paul failed to raise it in state court. Response at 30. In the Petition, Paul alleges that he raised this issue on direct appeal but could not raise a claim of ineffective assistance of counsel on direct appeal. Petition at 47-48. He further asserts that he raised this claim in a motion to modify his sentence, which cannot be appealed. Id. at 31, 47-48. As to this latter point, Florida Rule of Criminal Procedure 3.800(c) is not a procedural mechanism by which a defendant can challenge the legality of his sentence, but rather is a means to request the sentencing court for mercy and lower a legal sentence. Because the Rule cannot be used to challenge the legality of a sentence or a raise a claim of ineffective assistance of counsel, the instant claims were not exhausted when Paul filed his motion to modify sentence. See Pagan v. McNeil, No. 09-23081-CIV, 2010 WL 3952000, at *1 (S.D. Fla. Oct. 8, 2010) ("Pagan's 3.800(c) motion cannot have exhausted his claim that his sentence violated federal law, let alone his additional claim that he was denied due process in revocation proceedings, when the motion did not challenge the legality of that sentence.").

Turning to the issue of whether Paul properly raised this claim on direct appeal, the Court notes that in an unpublished opinion, the Eleventh Circuit found that an adjudication of a claim presented in an Anders brief can satisfy the exhaustion requirement. See Jenkins v. Bullard, 210 F. App'x 895, 898 (11th Cir. 2006). This is so, because the Anders procedure requires an appellate

attorney to note possible appellate issues in the <u>Anders</u> brief and the appellate court is required to conduct an independent review of the record to determine if those possible issues are of arguable merit. <u>Id.</u> Thus, when an issue is raised in an <u>Anders</u> brief, it satisfies the exhaustion requirement under AEDPA. <u>Id.</u> Here, however, Paul's appellate counsel did not raise this issue in the <u>Anders</u> brief. Resp. Ex. 3. Likewise, Paul never filed a pro se initial brief, let alone raised this issue. <u>Id.</u> As such, Paul did not exhaust this claim through his direct appeal proceedings. <u>See</u> <u>Jenkins</u>, 210 F. App'x at 898. The record further reflects that Paul did not raise this claim in his Rule 3.850 Motion. Resp. Ex. 7 at 4-16. Therefore, neither the circuit court nor the First DCA was given an opportunity to review the claim. In light of this record and Paul's failure to allege cause and prejudice, the claim in Ground Four is due to be dismissed as unexhausted.

Even if properly exhausted, Paul is not entitled to relief on this claim. "In non-capital cases, the Eighth Amendment does not 'require strict proportionality but rather forbids only extreme sentences that are grossly disproportionate to the crime.'" <u>Pate v. Warden</u>, 822 F. App'x 960, 962 (11th Cir. 2020) (quoting <u>Graham v. Florida</u>, 560 U.S. 48, 59-60 (2010)). The Eleventh Circuit explained in <u>Pate</u> that:

> To determine whether a sentence for a term of years is grossly disproportionate to the crime, the court must "begin by comparing the gravity of the offense and the

severity of the sentence." Id. at 60, 130 S.Ct. 2011. This inquiry is based on "all of the circumstances of the case." Id. at 59, 130 S.Ct. 2011. If this "threshold comparison" yields an "inference of gross disproportionality," which will be "rare," "the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." Id. at 60, 130 S.Ct. 2011 (quotation marks omitted). Only if this "comparative analysis" validates the initial inference of gross disproportionality is the sentence cruel and unusual. Id.; see United States v. Raad, 406 F.3d 1322, 1323–24 (11th Cir. 2005) (outlining the same basic approach).

Id. at 962-63.

Here, the record evidence reflects that Paul and several of his friends drove around in a vehicle and robbed by gunpoint multiple people they saw walking or standing outside. Resp. Ex. A1 at 82-104, 124-49, 157-62. The co-defendants and Paul each testified that Paul possessed and pointed the real gun at the victims and that he bought that firearm as well as a BB gun another co-defendant used during the offenses. Id. After being arrested, Paul attempted to convince his co-defendants not to cooperate with the State. Id. at 197. The circuit court determined "that on the night of the incident in question, there was a very clear, loosely organized, small group of young people who had decided to engage in potentially lethal conduct that exposed numerous people within our community to potentially life ending scenarios." Id. at 212. According to Paul, his co-defendants received sentences of fifteen years, thirty-

five years, and forty-two-and-a-half years in prison. Based on this record, Paul has failed to establish that his sentence is one of the rare instances in which his term of years is disproportionate to the offenses he committed or the sentences his co-defendants received. Paul's forty-nine-year sentence reflects the circuit court's finding that he was the organizer of the crime spree and both carried and brandished the firearm which placed multiple victims in life-threatening situations. In light of the fact that Paul faced life sentences for these crimes, the Court finds his sentences are not disproportionate to the offenses or disparate to his co-defendants' sentences. It follows then that counsel cannot be deficient for failing to raise these meritless challenges. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Accordingly, the claim for relief on Ground Four is due to be denied.

### E. Ground Five

In Ground Five, Paul alleges that his counsel was deficient for failing to orally move to withdraw his plea after the circuit court imposed sentences on his co-defendants and before it was able to sentence him. Petition at 48-49. According to Paul, he was the third defendant to be sentenced at the joint

sentencing hearing and prior to being sentenced his counsel told him "'its' [sic] not looking good Jon the last one got 42 years and the one before got 35 years." Id. Paul maintains that "[r]ight then and there Counsel should have advised Paul to withdraw his plea pursuant to [Florida Rule of Criminal Procedure] 3.170(f)." Id. at 49. He contends that the State violated an oral agreement when it called the victims and his co-defendants to testify at the sentencing hearing. Id. Additionally, he asserts that counsel should have moved to withdraw the plea after sentencing as well. Id.

In response, Respondents aver that Paul failed to raise this claim in state court and thus, failed to exhaust it. Response at 34. Paul merely states in the Petition that he could not raise claims of ineffective assistance on direct appeal. Petition at 49-50. However, such claims can be brought in Florida under Rule 3.850. Paul's Rule 3.850 Motions did not raise this issue though. As such, Paul failed to exhaust this claim. Paul has not alleged cause and prejudice to overcome his failure to exhaust and he has not otherwise alleged that he is actually innocent. Therefore, the claim in Ground Five is due to be dismissed as unexhausted.

Nevertheless, even if properly exhausted, the claim fails because Paul's prejudice allegation is entirely speculative. If counsel had successfully withdrawn Paul's plea, which seems unlikely given that the sentencing hearing was almost over, Paul faced potential life-sentences had he proceeded

to trial, which would greatly exceed the forty-nine-year concurrent sentences he received pursuant to the open plea. Without speculating, Paul has no way of knowing whether he would have received a lesser sentence had he withdrawn his open plea. Therefore, this claim is due to be denied because it is speculative. See Jenkins, 963 F.3d at 1273; Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Based on the above, relief on the claim in Ground Five is due to be denied.

### F. Ground Six

Paul maintains that his counsel was ineffective for failing to move to recuse the sentencing judge because the judge had a reputation, although he does not further explain this reputation. Petition at 50-51. He further states, without explaining its relevance, that "the defendant pled to one Judge and was later sentenced by another Judge." Id. at 51.

Respondents argue this claim is unexhausted because Paul never raised it in state court. Response at 35. Again, in the Petition, Paul asserts that claims of ineffective assistance of counsel cannot be raised on direct appeal. Petition at 51. Notably, the record establishes that Paul did not raise this claim on direct appeal or in his Rule 3.850 Motions; therefore, the claim is unexhausted. Paul has not alleged his actual innocence or cause and prejudice to overcome his failure to exhaust. As such, the claim in Ground Six is due to be dismissed.

Nevertheless, even if properly exhausted, this claim is meritless. In Florida, "[a] trial judge's action in other cases or a reputation among lawyers for certain sentencing practices are simply legally insufficient reasons to disqualify a trial judge." Williams v. State, 987 So. 2d 1, 10 (Fla. 2008). To the extent Paul may be complaining about the fact a different judge sentenced him than the one that took his plea, Florida Rule of Criminal Procedure 3.700(c) provides:

> In any case, other than a capital case, in which it is necessary that sentence be pronounced by a judge other than the judge who presided at trial or accepted the plea, the sentencing judge shall not pass sentence until the judge becomes acquainted with what transpired at the trial, or the facts, including any plea discussions, concerning the plea and the offense.

Fla. R. Crim. P. 3.700(c)(1). Here, the record reflects that the sentencing judge heard evidence of what occurred; therefore, the judge complied with Rule 3.700(c)(1). As neither of Paul's grounds for recusal would have been successful, counsel cannot be deficient for failing to seek recusal. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Accordingly, Paul is not entitled to relief on the claim in Ground Six.

### G. Ground Seven

Finally, Paul argues that the cumulative effect of counsel's alleged errors prejudiced him. Petition at 52-53. However, where all individual claims are

meritless, a claim of cumulative error is also without merit. <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012). As explained above, each of Paul's claims of deficient performance fail; therefore, his claim of cumulative error likewise fails. Relief on the claim in Ground Seven is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Paul seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Paul "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a

claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Paul appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of May, 2021.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:     Jon David Paul #J40337
       Counsel of record